All right, our next case for this morning is United States v. Fisher. Ms. Christensen. Good morning, Your Honors. Good morning, Counsel. May it please the Court, my name is Joanna Christensen, and I represent the appellant, Dexter Fisher, in this case. Since I filed the opening brief in this case, several things have changed regarding the issues I raised. So at this point, I think it's my duty to lay out the path that we have remaining for us. Of course, the first issue has been disclosed by another case. And then I'll move on to the second issue. And the main case, of course, we'll talk about is the Flores case, which was decided by this Court about waiver and forfeiture. Initially, our argument is that Flores misconstrues the Supreme Court's waiver slash forfeiture rules. And when there is a failure to object, that is forfeiture, not waiver. But I believe that Mr. Fisher's case falls outside of Flores, because the factors this Court looked at to find waiver do not exist in Mr. Fisher's case. Specifically, there was no intentional relinquishment of his right. He didn't challenge any of the conditions of supervised release. There was no evidence of strategy in not challenging those. And he did not waive reading. In fact, the District Court did not inquire if he personally had read the conditions, and did not inquire if he personally agreed with the presentence report, aside from the factual findings, which the Court basically does, if not read, the Court puts on the record in a way that is not always done on the condition. Right. And we're not seeing that as much anymore, the full reading of all, most of the time that is waived. Those are factors that this Court considered in Flores, so I'm distinguishing in this case. The most compelling issue that we have left is whether there's a compelling reason for this Court not to find waiver under Flores and to review for what is plain error, admittedly, and forfeiture in this case. And compelling reasons exist in this case. First, this is a condition that has been found to be unconstitutionally vague and overbroad, particularly in the manner in which it was reported. We're speaking about psychoactive substances. Yes, the psychoactive substances. And of course, there are essentially two conditions. One, the judge says at sentencing, and then the one that's actually printed in the presentence report. But we certainly do have that, and we know that the oral sentence controls, and so on. But doesn't the written sentence, if it does anything, narrow or clarify the oral condition? It says what we mean. It gives a list, expressio unius, et cetera, or a word is known by its neighbors, whichever maxim you like. But if it narrows as opposed to broadens, why is he harmed by it? I'm not entirely sure it narrows. If it was listed simply as the examples, bath salts, synthetic marijuana, spice, glue, it's the et cetera problem. And I think the et cetera and glue. Because when you add glue in there, and then et cetera, we have just a variety of things that are used by people to become intoxicated. But surely she means like huffing glue, right? I assume she does, but people can also huff gasoline, and Freon, and paint, and markers, and whatever else people can do. And that's the problem. It's not a limiting parenthetical. It's actually an expansive parenthetical when the et cetera is added in. There was notice of the parenthetical though, correct? It was in the PSR. That was in the presentence report. It's unclear from the record why the court did not read that and how it got into the judgment. There are various ways the judgments are prepared. I know the district court herself does not, I think, type up the judgment. But that makes it vague, and that's the argument that we have. The other portion of that is that it's not related to this offense. He admits using controlled substances in alcohol, and those are banned by other conditions in his case. So there's no evidence linking his addiction ever to these kinds of substances. And it is just further fodder for the probation officer to use as a revocation when in reality his problem is addiction that would cause the offense. He robbed pharmacies of OxyContin because he was addicted to opioids. Third, the condition's not consistent with the sentencing guideline policy statement, which is part of the statute 3583 that it must be consistent. Again, the judgment must be corrected anyway. That's another compelling reason because of the error in the terms of supervised release in addition to the difference between the oral and written pronouncement. It added an additional count, did it not? It actually only, the judge at sentencing only imposed on four counts. The government concedes that's got to be fixed. That's got to be fixed. I think our main contention then is how, what the remedy is. And that, it brings me to the fifth compelling reason, which of course is a slender read. I understand the First Step Act is pretty clear. I'm not challenging Pearson at this point. But allowing this case to go back for resentencing would allow the district court to exercise the discretion she said she wished she had, that she wasn't going to impose 57 years if it was up to who thinks Mr. Fisher should serve 57 years in prison is the government. I don't think that's an appropriate sentence. My opinion matters probably the least. But importantly, the district court didn't think that and Congress no longer thinks that. And I think that's a very compelling reason to send this back. It's not always been the remedy for this court, but it has been the remedy in the past when resentencing can broaden and perhaps change the punishment of the defendant. That's the compelling reason that FLORA has left open in its waiver analysis. Well, if we send it back with specific instructions, it's a little different. Yes. But I think you're arguing we have the discretion if we want to, to send it back more broadly or with specific instructions. And you're arguing, even though, frankly, it's a hook, right? You know, there's a problem with this, with both the number of counts for which supervised release was imposed and also with the failure of the oral and written sentence on the psychoactive substances to say the same thing. So that opens up the judgment. And you're saying we should just take that hook. I'm having trouble seeing why that should shake our confidence in, quote, unquote, the sentencing package that the district court used. Now, of course, it's a very tough example of line drawing, right? He's only about four months and change away from the effective date of the first step act. Correct. Correct. The lines have to be drawn when mass changes in the way the statute worked, particularly 924C. I understand lines have to be drawn. And I think it's important to note that Congress, that can seem to get nothing done, found this is important enough to get done and make that change. And certainly clients who have come after that are benefiting from that. When they made the change, they also include the retroactivity for portions of it, right? For portions, right. They drew a line similar to what Dorsey essentially drew. And Mr. Fisher missed that line. And it is a hook. It is what a defense attorney with a client who's serving what will be the rest of his life in prison uses as a Hail Mary in this type of case. But when you look at the sentence itself, if this weren't a mandatory sentence, absolutely we'd be raising the substantive reasonableness of a sentence of 57 years. I think that as far as you're talking about the package and why we should question that this condition should unbundle the entire package is the district court words herself. I think that she laments the fact that she has to impose this sentence. I think as any judge would, imposing 57 years alone for this offense or a set of offenses. But she says if the law changes and you have good conduct, she dangles a carrot for him. And if you have good conduct, I would reconsider that. And I think that is enough to show that if she's allowed to exercise her discretion, we should let her do that. All right. Well, thank you. Thank you. Mr. Sawa. May it please the court, counsel, Kyle Sawa on behalf of the United States. Of the five issues presented to this court, three of those are controlled by Seventh Circuit precedent in favor of the government. One of those is a clerical error that can be remedied by Rule 36 in the district court. It can be, but does it have to be? I mean, sometimes when we have failures of the oral and the written sentence to conform, we simply send it back to the district court. There's a good reason for doing that, which is to keep control of the judgment in the court that entered that judgment. Occasionally, we even change things ourselves. Sometimes we put the burden of people on people to raise other things. But within our set of choices is certainly the ability to send this back for the district court to fix it. Your Honor, I agree that the court does have that discretion, but it's unnecessary in this case. It's clearly a clerical error. We can see two things that are wrong with this. First of all, the addition of this list of things that might be psychoactive, which frankly, even when I read that, I began to think of all sorts of things that are psychoactive substances. You know, jalapeno peppers, if you've ever eaten a large number of them at any given time, are, but you know, nicotine, caffeine, lots of things. So that should be fixed. You know, why should he have to live with the vagueness of et cetera? And certainly, the supervised release on the counts that she orally announced it for, that has to be fixed. Your Honor, government contend that with respect to the supervised release condition, it's clearly been waived under Flores, along with the... I'm not sure it has been. Your Honor, government contend, along with the notice that defendant received, there's also strategic reasons, just as there was in Flores in this case. No, there are no strategic reasons to have supervised release, to have a longer sentence on a bunch of counts than you would have had otherwise. I just don't see that. Sorry, Your Honor, I was referring to the psychoactive condition. Oh, the psychoactive, yeah, right. I mean, there's nothing strategic about the supervised release problem. As to the psychoactive, I don't see anything that's strategic there either. And you know, you've got to take the good with the bad. Let's conform the written judgment to the oral one. Maybe that's good for him, maybe it's bad for him. Respectfully, the government contend, just as Flores, Flores had a condition as far as employment. And in the allocution of the defendant, she talked about how she wanted to get skills for a job. Just as here, we have the allocution of defendant talking about his addictions to various controlled substances. And so why not have the oral condition, you shall not knowingly purchase, possess, blah, blah, blah. It's over here in page appendix 58. That's part, excuse me, Your Honor. That's the condition that the district court judge in her discretion imposed. We would agree with that, Your Honor. And so the written judgment needs to be fixed to say that. We agree, Your Honor, and that can be easily remedied via rule 36. Well, we're back where we started. It can be done that way. I don't disagree with you, but I don't think it has to be done that way. And then that takes us to the question whether this case is a candidate for more broad resentencing. The government has this sort of casual remark, you know, life is hard in its brief, which seems a little callous to me. But, you know. Why do mistakes like this happen in this particular case? As far as which mistake, Your Honor? The oral sentences are different from the written sentences. Your Honor, I believe it's just a clerical error. I think it was clear. Clerical error? Yes. As far as the number of supervised release terms, I think it was clear at sentencing, which counts the judge referred to, when that was translated into the judgment, all counts were included, instead of the specific counts, which the judge included. I think the answer to... It's clear enough that the judge could tell when she reads it, that it's different, right? The judge reads off. I mean, I think it's inadvertence, frankly. You know, she reads off the things. Maybe she's looking up and down and summarizing. You know, I don't think there's any question that the court reporter accurately transcribed what was said in the courtroom. And the government doesn't contend so. The government agrees that the oral announcement by the judge is the correct sentence in this case. But just when it came to the judgment, for whatever reason, it was transcribed incorrectly and should be fixed. The government does agree with that. Well, to get back to why was it transcribed incorrectly, who transcribed it? Court reporter? Your Honor, it'd be my understanding whoever prepares the judgment for the particular judge. So you don't know... Yeah, that's correct, Your Honor. I'm not aware of how the district court judge handles particular judgmentsments that are written. But in my understanding, it would be prepared by the clerk or CRD or someone of that nature. As far as the errors that you referred to of how does this happen? You know, the government concedes, as far as the forfeiture, that the judge should have conducted a forfeiture and asked if the parties requested one and did not do so in this case. But as Cherry reflects, that is a harmless error, as this court has ruled. As far as the psychoactive condition, the government again contends that that's been waived. There are strategic reasons that the defendant did not object to that condition. I can't imagine what they are. Your Honor, I believe the government believes that, you know, in his allocution, he's talking about the addiction that he has. So what? He already has this. He's not saying et cetera means anything to him. Does he really want to open up more possibilities for his probation officer to write him up on a revocation? What reason would somebody have for that? Government contend if the defendant is arguing to the court for some kind of leniency because of his addictions. He's not getting any leniency. He already knows he's getting 57 years. What conceivable leniency? I've been told by assistant U.S. attorneys that people are z'ed out by the time of that stage of the sentencing, that they hear 57 years and then that number is just resounding in their head. And some condition of supervised release that's going to kick in when he's 82 years old is not what he's really focusing on. I just don't think strategy plays any role in this. I understand, Your Honor. The government believes we can't jump into the head of the defendant, but there would be strategic reasons. Oh, you like to say that. And when there's a plausible strategic reason, we acknowledge that. Sometimes you're at an earlier stage and perhaps you're preserving acceptance of responsibility, discounts or something that's not available in this case because this case is completely driven by mandatory sentencing provisions enacted by Congress. Your Honor, we believe that as far as that particular condition and the supervised release term, when you look at that with the full package, as this court stated, the discretionary sentence in this case was one day. It's hard to believe that the addition or subtraction or modification of this particular supervised release condition would have any change on the custodial sentence. It's not going to change the custodial sentence because it can't. That's right. So sitting back on a full remand, the government doesn't believe it's appropriate. When you look at what the defendant is arguing as far as the errors in this case, they simply don't affect the custodial sentence given by the court. For those reasons, a full remand is not necessary here. If there are any other questions, the government will rely on its brief and ask the court to affirm. All right. Thank you so much. Thank you. Anything further, Ms. Christensen? I'll add a few comments. I do have some insight into why a mistake happened. I mean, I think it is clerical. But I do think in some districts, the probation officer I have heard, and this is hearsay on my part, actually submits the conditions and then they're cut and paste into the judgment. I believe that's probably done by a law clerk or the judge's deputy, whoever does that in general. But this goes back to, in my view, probation officers who are recommending these conditions that this court has struck down. You're talking about not the custodial sentence, but the... I'm talking about the psychoactive substance of condition because that's been struck down by this court. This court has questioned it over and over again. We've been very tough on that. Right. And there are other conditions that are also making a reassurgence now that plain error and waiver has become more of an issue. And I'm arguing some of those other cases. But it is probation officers pushing that envelope and bringing those issues back. I see I'm out of time. If I could add one comment. I think when we're talking about strategy, it's one thing to talk about the defendant's strategy. But actually, strategy is defense counsel's strategy. And whether there is defense counsel's strategy in waiving that. Mr. Fisher had no strategy other than essentially to beg for his life and admit that he was an addict. And that's why he committed the crimes. Defense counsel had no strategy because defense counsel knew what the sentence was going to be in essence. And if he had gotten a guideline sentence other than one day, does it really matter after you get 57 years? So there's no reason to not object to conditions. So I urge this court to issue a full remand. Thank you. All right. Thank you very much. Thanks to both counsel. We'll take a case under advisement.